GEORGE HUGGETT AND JOHN M. C. SMITH v. GEORGE W. CASE, ALMA S. CASE, AND MARY A. STACEY.

*Swamp lands—Location of parcel included within the grant of 1850, after such grant—But before the approval by the Secretary of the Interior of list of lands selected by the State—And when there was nothing in land-office designating the parcel located as falling within the grant—Is confirmed by Act of Congress of March 2, 1855—Which establishes locator's right to the land—If land is patented by the State to third party, under Act 197, Laws of 1883—Apparent title thus conveyed is held in trust for the locator or those claiming under him—To whom he will be decreed to convey the same—Complainant is confined to the position taken in his bill—And bound by the case made therein.*

1. Where a party located a parcel of land included within the grant of so-

called "swamp lands," made by the United States to the State of Michigan *before* such location, but the list of lands selected by the State had not been approved by the Secretary of the Interior, and there was nothing in the land-office designating the parcel located as falling within said grant,—

*Held,* that the act of Congress of March 2, 1855, confirmed said entry, and established the locator's right to the land, the case falling within the principles laid down in *Dale v. Turner,* 34 Mich. 405.

2. Where in such a case a third party secured a patent from the State under Act 197, Laws of 1883, the apparent title thus acquired is held in trust for the locator or those claiming under him, to whom he will be decreed to convey the same.

3. A complainant will not be permitted to shift the position taken in his bill of complaint, but is bound by the case therein made.

Appeal from Eaton. (Hooker, J.) Argued April 22, 1886. Decided June 10, 1886.

Bill filed to compel conveyance of defendant's apparent title to land. Defendants Case appeal. Decree modified and affirmed. The facts are stated in the opinion.

*Huggett & Smith,* for complainants:

The proper location of land gives to the locator a vested title, of which he cannot be divested without due process of law : *Merrill v. Hartwell,* 11 Mich. 200 ; *Johnson v. Ballou,* 28 Id. 396 ; *Dale v. Turner,* 34 Id. 405 ; *F. & P. M. Ry. Co. v. Gordon,* 41 Id. 420 ; *Ives v. Ely,* 57 Id. 573–4 ; 3 Washb. Real Prop. p. 528, §§ 38, 41 ; *U. S. v. Fitzgerald,* 15 Peters, 407 ; *Carroll v. Safford,* 3 How. 460 ; *Stark v. Starr,* 6 Wall. 402 ; *Kerr v. Watts,* 6 Wheaton, 551, 560 ; which interest is taxable, and can be sold on execution : *Carroll v. Safford,* 3 How. 459.

A confirmation of such title by law is in effect a grant, as much as if it contained in terms a grant *de novo* : *Strother v. Lucas,* 12 Peters, 454 ; *Chouteau v. Eckhart,* 2 How. 372.

Neither the Commissioner of the General Land Office nor any other officer can cancel a patent *ex parte* : *People v. State Treasurer,* 7 Mich. 366 ; *Merrill v. Hartwell,* 11 Id. 200.

Vested rights can ordinarily be determined by forfeiture only on judicial determination of the facts : Cooley's Const. Lim. 351–362 ; *People v. Bank of Pontiac,* 12 Mich. 537 ; *People v. Humphrey,* 23 Id. 471.

*Olds & Robson*, for defendants Case :

The location by Ashley was not made until 1852 ; the forty acres of swamp land then belonged to the State under the swamp-land act of 1850, and was beyond the control of the general government: *Busch v. Donohue*, 31 Mich. 481; *Dale v. Turner*, 34 Id. 405.

Where a location of land is invalid upon its face, as if made on lands already disposed of, the commissioner may properly cancel the location : *Robbins v. Bunn*, 54 Ill. 48, and cases cited.

The location being illegally made, the grant to the State for railroad purposes (11 U. S. Statutes at Large, 21) conveyed the land to the State, and the railroad companies not having received the title, the same was still in the State for the purposes of the act: *Bowes v. Haywood*, 35 Mich. 241; *Fenn v. Kinsey*, 45 Id. 446 ; and the land being afterwards granted to the State for all purposes (U. S. Statutes, 1878–9, p. 490), it was competent for the State to patent the land in controversy to George W. Case.

CHAMPLIN, J.   Complainants filed their bill of complaint to compel defendants to release and convey to them all right, title, and interest which they have, or claim to have, in the S. ½ of S. E. ¼ of section 7, in township 4 N., range 6 W., in the county of Eaton.

Complainants claim to be the equitable owners of the legal estate, derived through mesne conveyances from one Jonas Ashley, who located a quarter section of land, including that in controversy, on a military bounty land-warrant of 1850, numbered 12,501, issued to him by the United States.   The location was made on June 14, 1852.

April 3, 1853, Jonas Ashley, without receiving any patent therefor, conveyed by warranty deed to Joseph Leadman. This deed was recorded in the register's office of Eaton county, February 3, 1869.   Joseph Leadman conveyed by warranty deed to George Connell, March 17, 1856, and the deed was recorded January 16, 1858.   George Connell conveyed by warranty deed, April 5, 1856, to Daniel Baughman, and the deed was recorded January 15, 1858, and he conveyed by warranty deed, April 28, 1857, to A. G. Culp.   This deed was recorded August 30, 1866.

Culp died intestate August 1, 1865, leaving Dolly Culp, an infant, his sole heir at law. Elizabeth Culp was appointed guardian of Dolly, and, as such guardian, under an order of the probate court of Eaton county, sold the premises, the twenty-sixth of May, 1866, to Jacob Culp, and this deed was recorded August 30, 1866. On the sixth day of August, 1870, Jacob Culp conveyed the premises by quitclaim deed to Sarah Ashley, George Connell, and Daniel Baughman, which was recorded September 5, 1870. December 30, 1881, Baughman quitclaimed to complainant John M. C. Smith, who afterwards, and on the thirteenth day of January, 1882, obtained a quitclaim deed from George Connell. Sarah Ashley died testate previous to the seventeenth of April, 1875, and her executor quitclaimed to said Smith on the seventh of February, 1882. March 1, 1882, Smith conveyed an undivided half of the premises to complainant George Huggett.

Forty acres of the land included in the location were what is known as "swamp lands," and as such had, previous to the location, been granted by the United States to the State of Michigan, and were not subject to entry under the warrant issued to Ashley.

March 2, 1855, the Congress of the United States passed an act for the relief of locators upon swamp lands, and directed that the President of the United States cause patents to be issued, as soon as practicable, to locators who have made entries of the public lands claimed as swamp lands, with land-warrants, prior to the issue of patents to the states, as provided for by the act of September 28, 1850; any decision of the Secretary of the Interior or other officer of the government to the contrary notwithstanding. 10 Stat. at Large, 634.

The portion of the quarter section which came under the designation of "swamp lands" was the N. W. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$ of the section, and was patented by the United States to the State, December 26, 1866.

The list of swamp lands selected under the swamp land act of 1850 was not approved by the Secretary of the Inte-

rior until the twenty-seventh day of October, 1853. At the time Ashley made his entry, therefore, there was nothing in the land-office which designated the land located by him as swamp lands.

The case comes within the principles laid down in *Dale v. Turner*, 34 Mich. 405, and the discussion was there so full, and the reasons given so satisfactory, that nothing further need be said. The act of 1855 made the entry complete, and established Ashley's right to the whole 160 acres; "the decision of the Commissioner of the General Land Office, canceling the entry, to the contrary notwithstanding."

The grant of lands to the railroad did not occur until afterwards, and could not convey the lands in question. It will be seen, by reference to the dates of the conveyances, that several of them were made after the act of 1855, and it is fair to presume in reliance upon the curative effect of that statute.

It remains to notice some other points in the case.

It is claimed that complainants acquired their knowledge of the defects in defendants' title while acting as the attorney and legal adviser of defendant George W. Case.

The particular lands in question, being the S. ½ of the S. E. ¼ of the section, were granted to the State by the general government as railroad lands, and they were claimed to have been earned by the Detroit & Milwaukee Railroad Company; and the Port Huron & Lake Michigan Railroad Company, claiming to be the successor of the first-named company, conveyed them to William R. Bowes in trust, June 30, 1873, and he conveyed to Lucien C. Wood in 1877, who, in turn, deeded them to defendant George W. Case in 1879, who claims to have gone into possession under this deed. This possession he attempted to maintain by violence, and was arrested and convicted upon a criminal charge. He claims that Smith defended him in the criminal suit.

Case then commenced suit in trespass against the parties who had disturbed his possession, and employed, as he says, Foote & Scott to prosecute such suit, and that afterwards complainants were substituted as his attorneys. These suits

were instituted in March and April, 1881. We have examined the record very carefully to ascertain if this claim of defendants is supported by the testimony, and are fully satisfied that it contains no evidence which tends to prove that complainants obtained any knowledge or information of the infirmity in defendant's title by reason of their professional relationship to him, or to his cases.

George W. Case applied for a patent from the State under Act No. 275 of the Session Laws of 1881, relating to railroad lands.[1] This application was opposed by Mr. Smith, who claimed to be the owner by virtue of the location by Ashley, and the conveyances from his grantees, as above stated. His opposition resulted in the application being withdrawn, and afterwards the complainants, by a contract dated March 1, 1882, agreed to sell the land in question to Alma S. Case, the wife of George W. Case, for $450. This contract complainants claim is still in force and valid. It is set forth and made a part of the bill of complaint.

It is true that the defendants Case both deny the validity of the contract, but such denial seems to be based upon the supposed invalidity of complainants' equitable title ; and subsequently, in the year 1884, the defendant again applied to the State for a patent under another act, passed in 1883, to relieve settlers upon railroad lands who entered relying upon the conveyances from Bowes, and at this time a patent was granted to him, under which he claims title.

Under the facts of this case it must be held that defendant Case holds the apparent title which he acquired from the State, in trust for the complainants, and must be decreed to convey the same to them.

The bill further alleges that on the fourteenth day of August, 1884, Dolly Culp, who was the sole heir at law of A. G. Culp, conveyed, by quitclaim, all of her interest in the land to complainant Smith, and he again quitclaimed an undivided half thereof to Huggett on the twenty-first of August, 1884.

---

[1] See *Toms, Executrix, v. Boyes*, 59 Mich. 386.

Complainants introduced evidence tending to prove that the conveyance made under the guardian's sale was void for not complying with the statute, and they have obtained a decree ordering " that all the right, title, and interest of the defendants Case, owned or claimed in and to the said premises described in the bill of complaint in this cause, by virtue of a certain land contract dated March 1, 1882, and executed by said complainants to said defendant Alma S. Case, be conveyed to said complainants by good and sufficient deed of conveyance."

This is erroneous. The complainants cannot be permitted to shift the position taken by them in their bill of complaint. The conveyance from Dolly Culp must be held curative of the guardian's sale, if any defect existed therein, and inures to the benefit of Mrs. Case under her contract, and the decree must be modified so as to preserve to the defendants all rights secured to them by the contract of March 1, 1882; and the decree must be further modified so as not to require an absolute discharge of the mortgage given by defendants Case to Mary A. Stacey, dated February 18, 1884, but decreeing it to be subject to the legal and equitable title of complainants under the entry and location of said Jonas Ashley, and any patent which may be obtained thereunder.

No costs will be decreed in this Court.

CAMPBELL, C. J., and SHERWOOD, J., concurred. MORSE, J., did not sit.